# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ANASTASIA P. DIEHL,  <br>    Plaintiff, <br><br>v. <br><br>THE MONEY SOURCE, INC., *et al.*, <br>    Defendants. | ) <br> ) <br> ) <br> )   CIVIL ACTION 17-0125-WS-B <br> ) <br> ) <br> ) |
| ANASTASIA P. DIEHL, <br>    Plaintiff, <br><br>v. <br><br>PAYMAP, INC., <br>    Defendant. | ) <br> ) <br> ) <br> )   CIVIL ACTION 18-0017-WS-B <br> ) <br> ) <br> ) |

## ORDER

These matters come before the Court on plaintiff's Motion for Leave to Amend Complaint and Renewed Motion to Consolidate (doc. 124) filed in Civil Action 17-0125-WS-B, as well as her Notice of Filing of Renewed Motion to Consolidate (doc. 27) filed in Civil Action 18-0017-WS-B. Defendants have filed responses opposing all or substantial portions of the Motion, which submissions are found at doc. 127 in Civil Action 17-0125 and at doc. 33 in Civil Action 18-017. Plaintiff filed a consolidated reply at doc. 129 in Civil Action 17-0125. The Motion is now ripe.

**I.   Procedural History.**

    *A.   Civil Action 17-0125 against TMS and LoanCare.*

This litigation arises from servicing and collections activity relating to a residential mortgage loan. Back on March 20, 2017, plaintiff, Anastasia P. Diehl, filed her Complaint in Civil Action 17-0125 against various defendants, including The Money Source, Inc. ("TMS"), LoanCare, LLC ("LoanCare"), and multiple credit reporting agencies. She did not name Paymap, Inc., as a defendant. Pursuant to the Amended Complaint (doc. 58) filed with leave of court on September 13, 2017, Diehl asserts the following claims against TMS and/or LoanCare:

(i) violation of the Real Estate Settlement Procedures Act ("RESPA") by TMS in failing to conduct a reasonable investigation in response to Diehl's notice of servicing error relating to a pair of mortgage payments that were not applied to her loan balance; (ii) breach of the mortgage agreement by TMS in not applying or misapplying mortgage payments for the months of January 2016, March 2016 and August 2016; (iii) fraud by TMS and LoanCare based on LoanCare's alleged misrepresentations regarding the benefits and features of the Equity Accelerator Program (the "EAP") in which Diehl voluntarily enrolled; (iv) invasion of privacy by TMS and LoanCare relating to TMS's purportedly unreasonable, harassing collection activity directed at Diehl; and (v) violation of the Fair Credit Reporting Act ("FCRA") by TMS in failing to conduct a reasonable investigation of Diehl's dispute of information TMS reported to credit bureaus.

Civil Action 17-0125 is governed by a Rule 16(b) Scheduling Order (doc. 40) entered by Magistrate Judge Bivins on June 14, 2017, as amended on November 15, 2017 (*see* doc. 76). Of critical importance to the instant Motion, the Scheduling Order provides as follows: "Any motion for leave to amend the pleadings or to join other parties must be filed by **July 31, 2017**." (Doc. 40, ¶ 5.)[1] The July 31 deadline came and went with no request by Diehl or anyone else to extend the allotted period for amending pleadings and joining additional defendants.[2]

Civil Action 17-0125 has proceeded normally through the discovery and pretrial phases. Discovery closed on January 17, 2018. Defendants TMS and LoanCare filed multifaceted Motions for Summary Judgment (docs. 86 & 91) on February 28, 2018. Following multiple extensions, briefing finally closed on the Rule 56 Motions on May 11, 2018, with the filing of a consolidated reply brief by TMS and LoanCare. (*See* doc. 126.) Adjudication of these Motions for Summary Judgment is being made by separate order entered contemporaneously with this Order. The effect of the summary judgment order is to dismiss all of Diehl's claims against

---

[1] This deadline aligned with the parties' joint proposal encompassed in their Report of Parties' Planning Meeting, which indicated, "The parties request until **July 31, 2017** to join additional parties and amend the pleadings." (Doc. 39, ¶ 8.)

[2] To be sure, Diehl filed an Unopposed Motion for Leave to File Amended Complaint (doc. 56) on September 12, 2017, six weeks after the deadline expired. However, that motion sought to amend the Complaint for the sole purpose of correcting a technical error in the name of one defendant (namely, substituting the name "Equifax Information Services, LLC" for "Equifax, Inc."). The perfunctory motion was granted via Order (doc. 57) entered on September 13, 2017.

LoanCare, but to allow certain causes of action (*i.e.*, the RESPA failure-to-investigate claim, the FCRA failure-to-investigate claim, the claim for breach of contract predicated on misallocation of the August 2016 mortgage payment to late fees first, and the invasion of privacy claim relating to TMS's collection activities) against TMS to proceed to trial. Civil Action 17-0125 is set for Final Pretrial Conference on July 10, 2018, with jury trial to follow during the August 2018 civil term. (*See* doc. 76.)

### B. *Civil Action 18-0017 against Paymap.*

On January 16, 2018, nearly ten months after commencing Civil Action 17-0125 against TMS and LoanCare, Diehl initiated Civil Action 18-0017, a second, related action in this District Court leveled solely against Paymap, Inc. Diehl's Complaint in Civil Action 18-0017 alleged that Paymap managed the EAP (a program marketed by LoanCare) in which Diehl had enrolled, and that Diehl's mortgage payments were routed to Paymap, which then failed to direct such payments to TMS (the servicer of Diehl's mortgage loan) to be credited to her loan balance. Based on these allegations, Diehl advances claims against Paymap for fraud (concerning alleged misrepresentations about the EAP), money had and received, conversion, wantonness, and negligence.

In stark contrast to Civil Action 17-0125, Civil Action 18-0017 remains in its infancy, procedurally speaking. Following an unsuccessful Rule 12(b)(6) motion directed at Counts Four and Five of the Complaint, Paymap filed its Answer (doc. 25) on May 3, 2018. The parties submitted their Rule 26(f) Report (doc. 30) last month, and a Rule 16(b) Scheduling Order (doc. 35) was entered by Magistrate Judge Bivins earlier this week, fixing a trial date of May 2019. No discovery appears to have taken place.

### C. *The March 16 Order.*

On February 27, 2018, Diehl, LoanCare, and TMS filed a Joint Motion to Consolidate and Extend Certain Scheduling Order Deadlines (doc. 84) in Civil Action 17-0125. In that Motion, Diehl, LoanCare and TMS argued that consolidation of Civil Actions 17-0125 and 18-0017 was appropriate because they "both address a common set of facts (the collection and application (or lack thereof) of the mortgage payments) and the legal issues regarding liability for the alleged mismanagement of those payments." (Doc. 84, ¶ 5.) At no time in this initial Motion to Consolidate did Diehl seek leave to amend her Complaint against TMS and LoanCare to assert further or different causes of action or legal theories against LoanCare.

For its part, Paymap opposed consolidation based on (i) the stark difference in procedural posture of the two actions; and (ii) the significant differences in factual and legal issues joined, such that the uncommon issues outweighed the common ones. Upon careful analysis and application of Rule 42(a), Fed.R.Civ.P., this Court concluded that Paymap had the better argument. In an Order (doc. 102) entered on March 16, 2018, the undersigned denied the Motion to Consolidate, reasoning as follows:

> "[T]he Rule 42(a) balancing test requires a federal district court to weigh the benefits and burdens of the proposed consolidation. … It is true that efficiency gains could be realized by consolidating the two matters, given the overlapping factual and legal issues. It is also true, however, that such efficiency gains would likely be modest, given the limited commonalities between the two cases and the significant areas of factual and legal divergence. Balanced against that consideration are the certainty that [Civil Action 17-0125] would be substantially delayed if consolidation were granted, and the risk that Paymap might incur prejudice as a result of undue pressure to constrict applicable pretrial deadlines as a means of forcing [Civil Action 18-0017] to catch up to [Civil Action 17-0125]. … After weighing the value of time and effort saved by consolidation against the inconvenience, delay and expense created by it, the Court exercises its discretion under Rule 42(a) to deny consolidation of these related actions."

(Doc. 102, at 6.) The March 16 Order left a faint glimmer of hope for movants by stating that the ruling was without prejudice to their ability to renew the motion for consolidation "if circumstances change in a manner that might materially alter the Rule 42(a) balancing analysis." (*Id.* at 7.)

On May 8, 2018, Diehl filed a Motion for Leave to Amend Complaint and Renewed Motion to Consolidate (doc. 124) in Civil Action 17-0125. The amendment and consolidation prongs of the Motion will be addressed separately.

## II. Motion to Amend Complaint in 17-0125.

Diehl seeks leave of court to file a Second Amended Complaint in Civil Action 17-0125. As an initial matter, Diehl's Motion fails to comply with the Local Rules' requirement that "[t]he proposed amended pleading must be filed as an attachment to the motion to amend." Civil L.R. 15(b). Because of that omission, it is difficult to discern precisely what plaintiff's proposed amendment would entail. At best, she states that the amended pleading would "(1) amend the fraud claim against LoanCare and (2) add[] claims against LoanCare, including joint venture and agency, establishing vicarious liability for Paymap's mishandling of the withdrawn funds."

(Doc. 124, at 7.)³ According to Diehl, she "does not need additional discovery" with respect to these proposed new claims; rather, she would rely on "those facts discovered in December and January." (*Id.*)

The timing of Diehl's Motion for Leave to Amend Complaint is highly problematic. As noted, she filed the Motion on May 8, 2018, more than nine months after the July 31, 2017 deadline for motions to amend pleadings set forth in the Scheduling Order. To compound the problem, Diehl filed her Motion at the close of summary judgment briefing, nearly three weeks after she filed her summary judgment response and just three days before defendants' reply was due. By seeking to amend her Complaint to inject new claims and theories against LoanCare into these proceedings long after submitting a summary judgment response from which she knew (or should have known) that her existing claims against LoanCare were tenuous at best, Diehl appears to be seeking an improper mulligan, a "do-over" to attempt to plead a case against LoanCare that she surmised was unlikely to survive Rule 56 review in its current configuration. Rule 15 was not intended to allow plaintiffs a second bite at the apple to start over and re-plead complaints whose defects have already been laid bare on summary judgment briefing.

Moreover, to allow amendment now would be extraordinarily disruptive to the parties, to the Court, and to the existing pretrial and trial deadlines. It would virtually guarantee the necessity of supplemental Motions for Summary Judgment, with attendant re-briefing, duplication of effort, and considerable expenditure of resources and additional litigation costs for

---

³ This explanation lacks clarity and specificity in key respects. For example, Diehl does not identify with precision how she would "amend the fraud claim against LoanCare." In briefing the Motions for Summary Judgment, Diehl reframed her fraud cause of action (Count III), abandoning the theory pleaded in the Complaint (*i.e.*, that LoanCare had misrepresented to Diehl that the EAP would save her money and that payments would be timely submitted to her lender) and instead characterizing as fraud LoanCare's purported representations that LoanCare and only LoanCare administered the EAP. (*See* doc. 118, at 28 & Exh. 6.) In the absence of objections by defendants, the Court addressed this recharacterized version of the Count III fraud claim on the merits in the separate summary judgment order. Thus, insofar as Diehl may be asking to amend Count III to state the sort of fraud claim she advanced in her summary judgment brief, then she has effectively already been permitted to do just that via the corresponding summary judgment order entered on this date. If, however, Diehl is asking to amend Count III in some other way, she has failed to provide any specifics as to the nature and substance of that proposed modification. Such vagueness about the precise contours of the amendment plaintiff seeks to make and her noncompliance with Civil L.R. 15(b) constitute an adequate and independent ground for denial of the Motion to Amend.

defendants. The re-litigation of summary judgment issues as to new and revised claims in Diehl's Second Amended Complaint would in all likelihood wipe away the July 2018 pretrial conference setting and the August 2018 trial setting. Furthermore, while plaintiff has announced that she will not require discovery on the new claims and legal theories, LoanCare almost certainly would, thereby prompting a reopener of discovery and even more expense and delay. Considered in the aggregate, such disruption would support a finding of dilatory motive and undue prejudice.

Finally, even accepting Diehl's explanations and rationalizations at face value, there was no reason why she needed to wait until May 2018 before filing her Motion for Leave to Amend. To be sure, plaintiff points the finger of blame squarely at LoanCare and TMS, saying they dragged their heels in producing documents and information about Paymap's role in the EAP. The record supports the notion that LoanCare and TMS did not respond promptly to plaintiff's discovery requests seeking details about Paymap; indeed, Diehl propounded written discovery requesting that information in June 2017, yet LoanCare did not respond with detailed information about Paymap's involvement until December 6, 2017. (Doc. 124, at 3-5.) Nonetheless, there are two major shortcomings with plaintiff's narrative. First, although her discovery requests reflect a clear understanding of the importance of ascertaining Paymap's exact role in the EAP program and its relationship to LoanCare and TMS,[4] Diehl did not file a motion to compel or otherwise avail herself of litigation tools to force production of documents and information concerning Paymap more expeditiously. Nor did Diehl request enlargement of scheduling order deadlines (such as the deadline for amending pleadings and adding parties) pending defendants' production of documents and interrogatory responses concerning Paymap. Thus, plaintiff shares responsibility for the circumstance in which she finds herself as to Paymap

---

[4] Indeed, Plaintiff's First Set of Interrogatories and Requests for Production to LoanCare, LLC (doc. 124, Exh. 1) served on June 29, 2017, included multiple, detailed queries specifically directed at Paymap's connection to the EAP, its relationship to LoanCare, and its involvement in Diehl's mortgage loan. (*See* doc. 124, Exh. 1, at Interrogatories 15-16, 18.) Likewise, on June 30, 2017, Diehl issued a subpoena *duces tecum* to Paymap requesting production of all records and documents in Paymap's possession relating to Diehl or Diehl's mortgage loan. (Doc. 127, Exh. H.) As evidenced by these discovery requests, plaintiff was well aware as of June 2017 that Paymap was a potentially critical player in the EAP and that it was important to pin down Paymap's precise role in the subject events giving rise to Diehl's Complaint.

and her claims against LoanCare. Second, plaintiff's effort to deflect blame to defendants falls flat because by her own admission, she learned that Paymap "had a major role in processing Plaintiff's payments" no later than December 6, 2017 and deposed witnesses about Paymap's role in January 2018, yet she waited for months thereafter before filing her Motion to Amend Complaint. (Doc. 124, at 5.) These facts lead inexorably to a determination that Diehl unduly delayed before seeking to amend her Complaint. *See, e.g., Tampa Bay Water v. HDR Engineering, Inc.*, 731 F.3d 1171, 1186 (11th Cir. 2013) ("district court may find undue delay when the movant knew of facts supporting the new claim long before the movant requested leave to amend" and where the amendment would cause prejudice) (citations omitted). "Although generally, the mere passage of time, without more, is an insufficient reason to deny leave to amend a complaint, *undue* delay may clearly support such a denial." *In re Engle Cases*, 767 F.3d 1082, 1109 (11th Cir. 2014) (citation omitted).

As Diehl points out, the Federal Rules of Civil Procedure generally provide that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Rule 15(a)(2), Fed.R.Civ.P. Notwithstanding this relaxed standard, however, it is well settled that "[l]eave may be denied because of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Andrx Pharmaceuticals, Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236 (11th Cir. 2005); *see also Mann v. Palmer*, 713 F.3d 1306, 1316 (11th Cir. 2013) ("Although leave to amend shall be freely given when justice so requires, a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment.") (citation omitted). As shown by the above discussion, many of those permissible grounds for denying leave to amend under Rule 15(a)(2) are in fact present here.[5]

---

[5] The Court's analysis has not addressed futility of amendment, and need not do so in order to resolve the Motion for Leave to Amend in its entirety. Nonetheless, it bears noting that even Diehl's proposed reconfiguration of her fraud claim against LoanCare (as presented in her summary judgment response) lacks an evidentiary foundation that would allow the claim to withstand Rule 56 review. Likewise, the Court is unaware of any record evidence – and Diehl certainly has not cited any – that might give rise to a viable claim that LoanCare was a joint venturer with Paymap or that they were in a principal/agent relationship. Specifically, Diehl has
(Continued)

Furthermore, Diehl's Motion to Amend faces a more stringent legal standard than that prescribed by Rule 15(a)(2). Where, as here, a plaintiff endeavors to amend her pleading after expiration of the applicable scheduling order deadline, the movant must first satisfy the "good cause" requirement of Rule 16(b)(4). *See, e.g., Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009) ("A plaintiff seeking leave to amend its complaint after the deadline designated in a scheduling order must demonstrate 'good cause' under Fed.R.Civ.P. 16(b)."); *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("[B]ecause Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)."). Rule 16(b)(4)'s "good cause" standard "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418 (citation and internal quotation marks omitted).[6] The burden of establishing the requisite good cause / diligence rests on Diehl. *See, e.g., Northstar Marine, Inc. v. Huffman*, 2014 WL

---

identified no evidence that would support a reasonable inference that LoanCare possessed a right to control the EAP or Paymap's actions in administering the EAP, as would be essential for liability to attach to LoanCare for Paymap's alleged misdeeds under either a principal/agent or a joint venture theory. *See, e.g., Franklin v. Mitchell*, 87 So.3d 573, 580-81 (Ala.Civ.App. 2011) ("Under Alabama law, the test of agency is the right of control, whether exercised or not. … For one to be an agent, the other party must retain the right to direct the manner in which the business shall be done, as well as the results to be accomplished ….") (citations omitted); *Flowers v. Pope*, 937 So.2d 61, 67 (Ala. 2006) ("[i]t is generally agreed that in order to constitute a joint venture, there must be a community of interest and a right to joint control") (citation omitted). In short, the record before the Court (which plaintiff says is complete, inasmuch as she disclaims any need for further discovery to develop the proposed new claims against LoanCare) appears devoid of facts that might allow Diehl to state cognizable claims against LoanCare for fraudulent misrepresentations that LoanCare alone administered and operated the EAP, joint venturer liability, or vicarious liability for Paymap's allegedly tortious conduct on a principal/agent theory. As such, the futility exception to the liberal amendment standard delineated by Rule 15(a) would appear applicable here.

[6] *See also Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008) ("To establish good cause, the party seeking the extension must have been diligent."); *King v. Chubb & Son*, 563 Fed.Appx. 729, 732 (11th Cir. Apr. 22, 2014) ("There can be no good cause where the record shows that the late-filing party lacked diligence in pursuing its claim.") (citation and internal quotation marks omitted).

3720537, *3 (S.D. Ala. July 28, 2014) ("The burden of establishing good cause / diligence rests squarely on the party seeking relief from the scheduling order.").

Diehl has not shown that, even with diligence, she was unable to comply with the Scheduling Order deadline for filing motions to amend pleadings. From the written discovery that she propounded to LoanCare and TMS in June 2017, as well as the subpoena she issued to Paymap at that time, it is clear that Diehl was well aware of the potential significance of Paymap's role in operating the EAP and the importance of pinning down LoanCare's relationship with that entity. Yet Diehl allowed nearly six months to pass from the time she propounded the written discovery until defendants responded in full, without ever seeking judicial intervention to compel more expeditious responses or request enlargement of the scheduling order deadline for amending pleadings pending receipt of those responses. Because record facts confirm that, with diligence, movant could have taken substantial additional steps to promote compliance with the scheduling order deadline for motions to amend pleadings, the Rule 16(b)(4) "good cause" standard is not satisfied here and the Motion for Leave to Amend Complaint is properly denied as untimely and unsupported by good cause.

For all of these reasons, plaintiff's Motion for Leave to Amend Complaint is **denied** pursuant to both Rule 15(a) and Rule 16(b)(4) of the Federal Rules of Civil Procedure.

**III.    Motion to Consolidate.**

As noted *supra*, Diehl's Motion to Consolidate was litigated and adjudicated less than three months ago. After full briefing, the Court entered an Order (doc. 102) on March 16, 2018 denying consolidation based on the markedly different procedural posture of the two cases and the limited commonalities between them. To be sure, the March 16 Order left open the possibility for a renewed motion to consolidate "if circumstances change in a manner that might materially alter the Rule 42(a) balancing analysis." They have not. Today, Civil Action 17-0125 and Civil Action 18-0017 remain procedurally divergent. Civil Action 17-0125 is ready for trial, yet formal discovery has not even commenced in Civil Action 18-0017. Likewise, the factual and legal overlap between the two cases is no greater today than it was in March. To the contrary, the summary judgment Order entered on this date dismisses the fraud claim in Civil Action 17-0125, as well as all claims asserted against defendant LoanCare, thereby eliminating key points of intersection between the two cases. In light of the post-summary judgment posture

of Civil Action 17-0125, consolidation is even less justifiable now than it would have been in March.[7]

In arguing in favor of her Renewed Motion to Consolidate, Diehl insists that the requisite changed circumstances exist because TMS and LoanCare's summary judgment filings make it "plain that the facts withheld from Plaintiff until December and January are central to grounds upon which Defendants seek summary judgment, and to the remaining claims." (Doc. 124, at 9.) This is in no way a "changed circumstance" materially affecting the Rule 42(a) consolidation analysis. It is certainly not a surprise that TMS and LoanCare would argue in their summary judgment briefs that Paymap was responsible for failing to forward two of Diehl's mortgage loan payments to TMS to be applied to her loan balance; to the contrary, it was entirely foreseeable and expected that defendants would advance just such an argument on summary judgment. The presentation of such an argument on summary judgment does not warrant revisiting the consolidation issue at this time.

In the absence of changed circumstances, plaintiff's Renewed Motion to Consolidate seeking to relitigate a consolidation request previously adjudicated by this Court less than three months ago is not viable. The Rule 42(a) balancing calculus no more favors consolidation today than it did on March 16, when the Court denied consolidation the first time. The Renewed Motion to Consolidate is properly **denied**.

**IV. Conclusion.**

For all of the foregoing reasons, Plaintiff's Motion for Leave to Amend Complaint and Renewed Motion to Consolidate (doc. 124) is **denied** in its entirety.

---

[7] Diehl's only remaining claims in Civil Action 17-0125 are that TMS violated RESPA and FCRA by failing to conduct a reasonable investigation when Diehl complained about alleged servicing errors and inaccurate credit reporting information; that TMS breached the mortgage agreement by deducting late fees from Diehl's August 2016 payment before applying the payment to principal and interest; and that TMS invaded her privacy by engaging in unreasonable collection activities. By comparison, Diehl's claims in Civil Action 18-0017 are that Paymap engaged in conversion and other torts by failing to pay over Diehl's January 2016 and April 2016 mortgage payments to TMS (the proper servicer), and that Paymap engaged in fraud as to the operations of the EAP. Consolidating these two disparate, tangentially related sets of claims would yield insubstantial efficiency gains, but cause considerable inconvenience, delay and expense. The balance of benefits and burdens of consolidation is not a close call.

DONE and ORDERED this 13th day of June, 2018.

                                          s/ WILLIAM H. STEELE
                                          UNITED STATES DISTRICT JUDGE